**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| June Johnson, (B61401), | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 19 C 5893 |
| v. | ) | |
| | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Stephanie Dorethy, Warden, | ) | |
| Hill Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner June Johnson, a prisoner at the Hill Correctional Center, brings this *pro se* habeas corpus action pursuant to 28 U.S.C. § 2254 challenging his convictions of aggravated kidnapping and aggravated criminal sexual assault from the Circuit Court of Cook County, Illinois. (Dkt. 11.) The Court denies the petition on the merits and declines to issue a certificate of appealability.[1]

## I.    Background

The following facts are drawn from the state court record (Dkt. 26.), the state appellate court's decision on direct appeal, *People v. Johnson*, 26 N.E.3d 586 (Ill. App. Ct. 2015) ("*Direct Appeal*"), and the post-conviction trial court's dismissal of Petitioner's claims on the merits.[2] (Dkt. 26-7.) A state court's factual findings are presumed correct in a federal habeas corpus proceeding

---

[1] The current Warden of Hill Correctional Center is Mark Williams. He has been substituted as the proper Respondent per Rule 25(d).

[2] Although a decision was issued on post-conviction appeal, the Illinois appellate court simply granted Johnson's counsel's motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987) and affirmed the post-conviction trial court's judgment without further discussion. (Dkt. 26-10, pgs. 1-3.) Thus, the Court "looks through" the appellate court's decision to the post-conviction trial court's factual findings. *See Thomas v. Watson,* 12 C 5373, 2020 WL 1701883, at *6, n.3 (N.D. Ill. Apr. 8, 2020) (citing *Wilson v. Sellers,* 138 S. Ct. 1188, 1192 (2018)).

unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Hartsfield v. Dorethy*, 949 F.3d 307, 309 n.1 (7th Cir. 2020) (citations omitted); *Hall v. Zenk*, 692 F.3d 793, 805 (7th Cir. 2012). Mr. Johnson has not set forth any evidence to rebut this presumption.

### 1. Petitioner's Trial

Around 1 a.m. on June 12, 2010, J.B. was walking to her boyfriend's house located at 89th and Normal in Chicago. *Direct Appeal*, 26 N.E.3d at 589. J.B. was 18 years old at the time and two and a half months pregnant with her boyfriend's child. *Id.* On the way there, she walked past a man whom she identified as Johnson. *Id.* When she was approximately one block away from her boyfriend's house, Johnson approached J.B. from behind and put his arm tightly around her neck, choking her. *Id.* He told her to be quiet and threatened to kill her if she screamed. *Id.*

Johnson moved J.B. to a vacant lot adjacent to the sidewalk where they could still be seen by cars driving by and people walking past. *Id.* at 590. Johnson once again threatened J.B. that if she made a sound, he would kill her. *Id.* He forced her to the ground and put his hand under her pants, under her underwear, and inside her vagina. *Id.* J.B. tried to lock her legs to prevent him from touching her. *Id.* She began to cry and begged him to let her go because she was pregnant. *Id.* Johnson told her the longer she resisted, the longer it would take. *Id.*

Johnson then pushed J.B. down an alley to an area between two garages, again choking her as he forced her along. *Id.* Once they were away from the sidewalk, Johnson forcibly placed both of his hands on J.B.'s shoulders to bend her over, ripped off her underwear, and raped her from behind. *Id.* He then told her to turn around, lifted her leg, covered her mouth to muffle her screams, and raped her while facing her. *Id.* Johnson ran away once he was finished. *Id.* A pair of ripped

green polka dot underwear was later found lying between the two garages, which J.B. identified as hers. *Id.*

Following this assault, J.B. went to her boyfriend's house and immediately told him she had been raped. *Id.* She was able to see her assailant from the light in the alley and described him as a tall, dark-skinned man wearing a hoodie. *Id.* Her boyfriend called the police, and J.B. was taken to the hospital where a sexual assault kit was completed. *Id.* Johnson's DNA was found on J.B.'s vaginal and anal areas. *Id.* at 597.

The nurse who performed the sexual assault kit related that the victim described her assailant as a black male with short braids and a caramel complexion, approximately 5 feet, 5 inches tall, 170 to 180 pounds, and wearing a red hoodie and blue jeans. *Id.* at 590. The emergency room physician conducted a general examination of J.B. and observed bruising on the upper portion of her arms. *Id.* He did not document trauma to her neck. *Id.* at 591.

Two days after the attack, J.B. met with a detective and explained how she had been approached from behind, grabbed, choked, fondled, and dragged into an alley where she was sexually assaulted. *Id.* She described her assailant as a dark male, around 6 feet tall and 200 pounds. *Id.* Several months later, J.B. was asked to identify her attacker from a photo line-up but could not do so, stating she would be able to identify him if she saw him in person. *Id.* at 590. She viewed a physical line-up a few days later and identified Johnson. *Id.*

At trial, J.B. denied ever describing Johnson to the nurse or the detective as being 5 feet and 5 or 6 inches tall, explaining she had consistently described her assailant as being taller than her but a little shorter than her boyfriend. *Id.*

3

Johnson testified in his defense and conceded he had sex with the victim. *Id.* at 591. He alleged the two met at a bus terminal that evening on his way home from work, rode the subway together, and had consensual sex behind a house where he thought she was staying. *Id.* Johnson claimed he did not choke her, threaten her, or force her to bend over, but rather picked her up and held her in the air. *Id.* According to Johnson, the sexual encounter only lasted a few minutes before someone yelled out asking who was behind the house, prompting him to run away from the scene. *Id.* A photo of J.B.'s green polka dot underwear was admitted into evidence, but he denied recognizing it and instead described her underwear as pink and white striped. *Id.* at 590-91.

During closing arguments, the defense attempted to counter the State's argument that this was a violent, nonconsensual encounter by attacking the victim's credibility and calling her a liar. *Id.* at 591; ECF 26-15 at AA 50 ([J.B.] "is the furthest thing from a brave survivor that there's ever been. [J.B.] is a liar."). In rebuttal, the State reciprocated. ECF 26-15 at AA 68 ("He can't keep the facts straight because he is the liar. Not [J.B.]."). The State also asked the jury to compare the situation to a car accident with no eyewitnesses and no visible injuries, explaining: "Does that mean that you didn't get in a car accident? Does that mean no one should take you at your word?" *Id.*

The jury found Johnson guilty of aggravated kidnapping, aggravated criminal sexual assault during the commission of a kidnapping, and aggravated criminal sexual assault causing bodily harm. *Id.* He was sentenced to two consecutive natural life terms. *Id.*

### 2. Petitioner's Direct Appeal

Johnson appealed his convictions, raising the following claims: (1) insufficient proof to establish that the asportation and detention of the victim was independent of the criminal sexual

4

assault; (2) insufficient evidence of the aggravating factor of bodily harm; (3) a violation of due process where there was a fatal variance between the aggravating factor of bodily harm charged in the indictment and the evidence presented at trial; and (4) denial of a fair trial due to (a) the State's prejudicial remarks during rebuttal argument; (b) the trial court's erroneous judicial rulings during closing arguments; and (c) ineffective assistance of trial counsel for (i) failing to properly impeach J.B. through the testimony of another police officer; (ii) failing to admit the detective's prior inconsistent statement into evidence; and (iii) knowingly eliciting damaging information from the victim during cross-examination. (Dkt. 26-1, pgs. 57-68.)

The state appellate court rejected Johnson's claims and affirmed his convictions. *Direct Appeal*, 26 N.E.3d at 600. Johnson raised the same claims in his *pro se* petition for leave to appeal (PLA), (Dkt. 26-5, pgs. 1-33.) which the Supreme Court of Illinois denied. *People v. Johnson*, 39 N.E.3d 1007 (Ill. 2015).

### 3.     Petitioner's Post-Conviction Proceedings

In post-conviction proceedings, Johnson filed a *pro se* petition contending: (1) trial counsel was ineffective for (a) failing to properly investigate the law and facts of the case; (b) failing to request a fitness hearing; (c) failing to challenge the suggestive identification procedures; (d) failing to request lesser-included offense jury instructions; (e) failing to present evidence of certain mitigating factors at sentencing; and (f) failing to object to consecutive life sentences; (2) the State knowingly used perjured testimony; (3) the State withheld exculpatory evidence regarding the suggestive line-up; (4) the State made various prejudicial remarks during closing arguments; (5) the imposition of consecutive life sentences was unconstitutional; and (6) ineffective assistance of

appellate counsel for failing to raise each of the above claims with the exception of the State's alleged failure to disclose exculpatory evidence. (Dkt. 26-6, pgs. 1-49).

The trial court summarily dismissed Johnson's petition on the merits. (Dkt. 26-7, pgs. 1-20.) On appeal, his counsel filed a motion for leave to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). (Dkt. 26-8, pgs. 1-25.) Johnson responded to the *Finley* motion, asserting his claims had merit and requesting a different attorney or the opportunity to proceed *pro se*. (Dkt. 26-9, pg. 1.) He did not, however, specifically address any issues about his convictions, but instead, simply attached a portion of his post-conviction petition. *Id.* at 3-41. The appellate court granted counsel's motion and affirmed the trial court's dismissal. (Dkt. 26-10, pgs. 1-3.)

In his *pro se* post-conviction PLA, Johnson presented claims regarding (1) the State's prejudicial and improper remarks during opening and closing arguments; (2) ineffective assistance of trial counsel for failing to request lesser-included offense jury instructions; (3) ineffective assistance of trial counsel for failing to properly investigate and challenge the suggestive line-up procedure; and (4) ineffective assistance of appellate counsel for failing to raise the second claim on direct appeal. (Dkt. 26-11, pgs. 1-18.) His PLA was denied by the Supreme Court of Illinois. *People v. Johnson*, 124 N.E.3d 474 (Ill. 2019).

## II.    Analysis

Johnson now brings a habeas corpus petition in which he asserts the following grounds for relief:

1.    Insufficient evidence to sustain his convictions for aggravated kidnapping and aggravated criminal sexual assault where the State failed to prove the asportation and detention of the victim were independent of the sexual assault;

2.    Insufficient evidence to sustain his conviction for aggravated criminal sexual assault where the State failed to prove the aggravating factor of bodily harm;

6

3.      A violation of due process where there was a fatal variance between the aggravating factor of bodily harm charged in the indictment (choking) and the evidence presented at trial (bruises on J.B.'s arms);

4.      Denial of a fair trial due to (a) various instances of ineffective assistance of counsel, (b) prosecutorial misconduct, and (c) the trial court's erroneous evidentiary rulings;

5.      Ineffective assistance of trial counsel for failing to request jury instructions on the lesser-included offenses of unlawful restraint and battery;

6.      The State knowingly used J.B.'s perjured testimony at trial;

7.      The State withheld evidence relating to "tainted" line-up procedures;

8.      The State made prejudicial remarks during closing arguments;

9.      The imposition of consecutive life sentences was impermissible; and

10.     Ineffective assistance of trial counsel.

(Dkt. 11, pgs. 5-6, 15.)

## A.      Sufficiency of the Claims Under Rule 2(c)

Respondent contends Claims 4, 6, 7, 8, and 10 should be dismissed under Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts because Johnson failed to allege any facts in support of these claims. (Dkt. 25, pgs. 8-9.)

Rule 2(c) requires that a petition "specify all grounds for relief available to the petitioner" and "state the facts supporting each ground." This requirement is more demanding than the "fair notice" standard applicable to ordinary civil proceedings under Rule 8 of the Federal Rules of Civil Procedure. *Mayle v. Felix*, 545 U.S. 644, 655 (2005). "A prime purpose of Rule 2(c)'s demand that habeas petitioners plead with particularity is to assist the district court in determining whether the State should be ordered to show cause why the writ should not be granted." *Id.* at 565 (internal quotations and citations omitted).

7

### 1. Claims 4 and 10 are Insufficient under Rule 2(c)

Respondent correctly argues that Claim 4, with the exception of an ineffective assistance claim more fully elaborated upon in Johnson's reply brief, and Claim 10 should be dismissed pursuant to Rule 2(c).

### i. Claim 4: Denied a Fair Trial

In Claim 4, Johnson presents naked assertions that allude to certain constitutional violations, but fails to provide any factual basis supporting each ground. Specifically, Johnson asserts he was "denied a fair trial by various instances of ineffective assistance of counsel, prosecutorial misconduct, and erroneous evidentiary rulings by the trial judge." (Dkt. 11, pg. 6.)

While Respondent argues Claim 4 is insufficient under Rule 2(c), it alternatively posits that Johnson's habeas corpus petition alleges the same multipart claim he advanced on direct appeal, wherein Johnson alleged several errors made by his trial counsel, the prosecutor, and the trial court denied him of a fair trial. (Dkt. 25, pg. 16.) Respondent's response individually addresses each subpart of Johnson's direct appeal claim. *Id.* But the only argument the Court can ascertain that Johnson seeks to advance on federal habeas review is an ineffective assistance claim for eliciting damaging testimony from the victim during cross-examination. *Id.* at 16, 23-24; (Dkt. 33, pgs. 10-11.) Of all the claims that Respondent lists as potentially being raised under Claim 4, this is the only claim upon which Johnson's reply brief elaborates. *See Carter v. Ryker*, No. 10 C 3783, 2011 WL 589687, at *10 (N.D. Ill. Feb. 9, 2011) (noting the claim did not comply with Rule 2(c), but using petitioner's reply to understand the factual basis and address the claim on the merits).

As for the other claims that may be encompassed in Claim 4, Johnson does not provide any further information in his petition or his reply brief, and the Court is not required to construct the

legal or factual arguments in support of these subclaims on federal habeas review. *See Small v. Endicott*, 998 F.2d 411, 417-18 (7th Cir. 1993); *Regains v. Robert,* No. 11 C 5445, 2012 WL 2513935, at *6 (N.D. Ill. June 27, 2012). Accordingly, any remaining claims raised in Claim 4—beyond Johnson's ineffective assistance claim regarding the elicitation of damaging testimony—are denied as insufficiently pled under Rule 2(c).[3]

### ii.         Claim 10:         Ineffective Assistance of Trial Counsel

With respect to Claim 10, Johnson generically argues his "trial counsel was ineffective" but fails to elaborate further. (Dkt. 11, pg. 15.) It is entirely unclear what Johnson is specifically alleging as the claim is void of any factual or legal argument. Claim 10 is plainly insufficient under Rule 2(c). *See U.S. ex rel. Faison v. DeTella*, No. 96 C 8211, 1997 WL 361129, at *5 (N.D. Ill. June 20, 1997) (dismissing ineffective assistance claims where the petitioner did not provide the basis of the claim). Claim 10 is therefore denied.

### 2.         Claims 6, 7, and 8 Avoid Dismissal under Rule 2(c)

With respect to Claims 6, 7, and 8, Respondent is correct that, standing alone, they are insufficient under Rule 2(c). In Claim 6, Petitioner contends the State "knowingly used perjured testimony from the victim at trial." (Dkt. 11, pg. 15.) Claim 7 alleges the State "withheld evidence relating to tainted line-up procedur[e]s." *Id.* And Claim 8 states the State "made prejudicial comments during closing arguments." *Id.* Such general assertions, without "stat[ing] the facts

---

[3] The Court recognizes that Johnson's reply brief includes a "Prosecutorial Misconduct" heading. (Dkt. 33, pg. 13.) But the arguments advanced therein appear to relate to claims that are more specifically articulated in Johnson's § 2254 petition: Claim 6 (the State's use of perjured testimony), Claim 7 (the State's withholding of exculpatory evidence), and Claim 8 (the State's prejudicial remarks during closing arguments). This Court considers these claims sufficiently asserted, but not Claim 4, with the exception of the ineffective assistance claim described above. Therefore, the Court need not elaborate on this point further.

supporting each ground," do not satisfy Rule 2(c). *See* Rule 2(c)(2).

But Johnson elaborates on each of these claims in his reply brief under the collective heading "Prosecutorial Misconduct," and provides enough information for this Court to understand the issues these claims assert. (Dkt. 33, pg. 13.) Thus, the Court declines to dismiss these claims outright pursuant to Rule 2(c). *See Carter*, 2011 WL 589687, at *10.

## B.      Procedurally Defaulted Claims

To preserve a claim for federal habeas review, a petitioner must present the operative facts and controlling legal principles of the claim to each level of state court on either direct appeal or in post-conviction proceedings, including a PLA before the Supreme Court of Illinois. *O'Sullivan v. Boerckel*, 526 U.S 828, 847-48 (1999); *Weaver v. Nicholson*, 892 F.3d 878, 886 (7th Cir. 2018); *Johnson v. Hulett*, 574 F.3d 428, 431 (7th Cir. 2009). Failure to do so results in a procedural default which bars this Court's review of the claim on the merits absent a showing of cause for the default and prejudice resulting therefrom, *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1977)), or that the failure to consider the claim would result in a fundamental miscarriage of justice. *Id.* (citing *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).

### 1.      Claims 6, 7, and 9 are Procedurally Defaulted

Claims 6, 7, and 9 were all raised for the first time in post-conviction proceedings. In Claims 6 and 7, Johnson raises prosecutorial misconduct claims, arguing the State knowingly used J.B.'s perjured testimony at trial (Claim 6) and that the State withheld exculpatory evidence relating to the physical line-up (Claim 7). As for Claim 9, Johnson contends the imposition of consecutive life sentences was impermissible.

10

All three claims were presented to the post-conviction trial court and post-conviction appellate court. [4] (Dkt. 26-6, pgs. 35-41, 45-46; Dkt. 26-9, pgs. 3-41.) Johnson, however, abandoned the claims in his post-conviction PLA to the Supreme Court of Illinois. Claims 6, 7, and 9 were therefore not exhausted through one complete round of state court review and, consequently, are procedurally defaulted. *See Boerckel*, 526 U.S. at 845 (to exhaust a claim under § 2254(b), the petitioner must present it in "one complete round of the State's established appellate review process").

Neither cause and prejudice nor a fundamental miscarriage of justice excuse the procedural default of Johnson's claims. First, Johnson makes no showing of cause and prejudice to excuse the defaults. Second, Johnson does not argue the fundamental miscarriage of justice exception. Excusing a procedural default under this exception is limited to the "extraordinary case, where a constitutional violation has probably resulted in the conviction of someone who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 321 (1995) (citations omitted). To satisfy this "demanding" and "seldom met" standard, *McQuiggins v. Perkins*, 569 U.S. 383, 386-87 (2013) (citing *House v. Bell*, 547 U.S. 518, 538 (2006)), Johnson must show that, in light of new, reliable evidence, no reasonable juror would have convicted him. *Schlup*, 513 U.S. at 327. Johnson

---

[4] Respondent argues Johnson did not raise Claim 6 in his response to his post-conviction appellate counsel's *Finley* motion. (Dkt. 25, pg. 10.) It appears, however, that Johnson presented— or attempted to present—this claim to the post-conviction appellate court in his response by attaching a copy of his petition for post-conviction relief. While the copy is incomplete and missing pages, it includes a list of the same claims presented to the post-conviction trial court in the first stage of post-conviction proceedings. (Dkt. 26-9, pg. 3.)

provides no new evidence to demonstrate he is innocent. Therefore, Johnson cannot excuse the defaults of Claims 6, 7, and 9. These claims are denied.

### C. Claims Reviewed on the Merits

Johnson is not entitled to federal habeas relief on his remaining claims (Claims 1, 2, 3, 4[5], 5, and 8) unless he can demonstrate the state court's rejection of his claim was either "contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States," or the state court decision was based upon "an unreasonable determination of facts" in light of the evidence before it. 28 U.S.C. § 2254(d); *see also Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Williams v. Taylor*, 529 U.S. 362, 412 (2000). This is a "highly deferential standard for evaluating state-court rulings" that is "difficult to meet" and "demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotations and citations omitted).

A state court's decision is "contrary to" clearly established federal law if it used the wrong legal standard or the state court "reached a result opposite to that reached by the Supreme Court on materially indistinguishable facts." *Virsnieks v. Smith*, 521 F.3d 707, 713 (7th Cir. 2008) (citing *Williams*, 529 U.S. at 405; *Jackson v. Miller*, 260 F.3d 769, 774 (7th Cir. 2001)). An "unreasonable application" occurs when the state court identifies the correct legal principle but unreasonably applies it to the facts of the case, *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted), thereby resulting in a decision that is more than simply incorrect, but objectively unreasonable, in other words, "so incorrect that it lies outside of the range of reasonable

---

[5] As discussed above, the Court's review of Claim 4 is limited to the ineffective assistance claim related to trial counsel's elicitation of damaging testimony.

conclusions." *Jones v. Wallace*, 525 F.3d 500, 503 (7th Cir. 2008); *Dixon v. Snyder*, 266 F.3d 693, 700, 703 (7th Cir. 2001); *Matheney v. Anderson*, 253 F.3d 1025, 1041 (7th Cir. 2001); *Washington v. Smith*, 219 F.3d 620, 629 (7th Cir. 2000).

### 1.    Claims 1 and 2:    Insufficient Evidence Claims

In Claims 1 and 2, Johnson challenges the sufficiency of the evidence for all three of his convictions. The state appellate court's decision on direct appeal is the relevant judgment for this Court's review as it was the last court to consider these claims on the merits in a reasoned decision. *McGhee v. Dittmann*, 794 F.3d 761, 769 (7th Cir. 2015); *see also Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) (a federal habeas court should look through an unexplained state court decision to the "last reasoned opinion" addressing the claim).

The Court applies a "twice-deferential" standard when reviewing the state court's ruling on Johnson's sufficiency of the evidence claims. *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam). First, the Court defers to the jury's verdict. "[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from the evidence admitted at trial." *Parker*, 567 U.S. at 43 (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam)). Evidence is sufficient to support a conviction where, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Parker*, 567 U.S. at 43 (quoting *Virginia v. Jackson*, 443 U.S. 307, 319 (1979) (emphasis in original)). Second, the standard of review this Court must use under § 2254(d), as explained above, is also extremely deferential. *See* 28 U.S.C. § 2254(d).

### i.    Claim 1:    Insufficient Evidence of Kidnapping

13

In Claim 1, Johnson contends there was insufficient proof to convict him of aggravated kidnapping and aggravated criminal sexual assault during the commission of a kidnapping because the asportation and detention of J.B. were incidental to, rather than independent of, the sexual assault. The appellate court's rejection of Johnson's claim was not contrary to federal law, as the court correctly identified the controlling legal principle. *Direct Appeal*, 26 N.E.3d at 592 (citing the above-stated sufficiency of the evidence standard from *Jackson*, 443 U.S. at 319). Equally, the court's ruling was not unreasonable.

The Illinois Supreme Court adopted the *Levy-Lombardi* doctrine to address sufficiency of the evidence issues related to aggravated kidnapping convictions. *See People v. Eyler*, 549 N.E.2d 268, 280 (Ill. 1989); *People v. Canale*, 285 N.E.2d 133, 139-40 (Ill. 1972); *see also People v. Black*, 2020 IL App (1st) 171819-U, ¶¶ 27-28; *People v. Smith*, 414 N.E.2d 1117, 1120-22 (Ill. App. Ct. 1980) (all citing *People v. Levy*, 204 N.E.2d 842, 844-45 (N.Y. 1965); *People v. Lombardi*, 229 N.E.2d 206, 208-09 (N.Y. 1967)). Under the *Levy-Lombardi* doctrine, "an aggravated kidnapping conviction should not be sustained where the asportation or confinement may constitute only a technical compliance with the statutory definition, but is, in reality, incidental to another offense." *Eyler*, 549 N.E.2d at 280 (citing *Levy*, 204 N.E.2d at 844-45; *Lombardi*, 229 N.E.2d at 208-09).

Illinois courts consider four factors to determine whether asportation and detention rise to the level of an independent crime of kidnapping: "(1) the duration of the asportation or detention; (2) whether the asportation or detention occurred during the commission of a separate offense; (3) whether the asportation or detention is inherent in the separate offense; and (4) whether the asportation or detention created a significant danger to the victim independent of that posed by the

14

separate offense." *People v. Siguenza-Brito*, 920 N.E.2d 233, 241 (Ill. 2009) (internal citations omitted); *Smith*, 414 N.E.2d at 1122 (adopting the four factors suggested by *Gov't of Virgin Islands v. Berry*, 604 F.2d 221, 227 (3d Cir. 1979)).

Applying these factors to the evidence offered by the State, the appellate court determined a rational trier of fact could have found Johnson's asportation of J.B. amounted to the independent offense of kidnapping. *Direct Appeal,* 26 N.E.3d at 594. The evidence showed that Johnson intercepted J.B. while she was en route to her boyfriend's house and moved her from the sidewalk to a vacant lot. Here, Johnson forced J.B. to the ground and began groping, but they could still be seen by cars driving by and people walking past. So Johnson, once again grabbing J.B. by the neck, forced J.B. down the alley to a secluded area between two garages instead. It was here that Johnson raped J.B. twice. *See id.* at 589-90, 593.

Only after Johnson moved J.B. to the area between the garages where it would be more difficult for them to be detected did he sexually assault her. *Id.* at 593-94. Thus, the evidence was more than sufficient to find Johnson's asportation of J.B. amounted to the separate offense of kidnapping outside of the sexual assault itself. Accordingly, the state appellate court's decision was not unreasonable. Claim 1 is denied.

### ii.       Claim 2:      Insufficient Evidence of Bodily Harm

Johnson similarly alleges the State failed to prove the aggravating factor of bodily harm to sustain his conviction for aggravated criminal sexual assault causing bodily harm. As in Claim 1, the state appellate court identified the controlling legal principle. *Id.* at 592 (citing *Jackson*, 443 U.S. at 319). Thus, the court's decision was not "contrary to" clearly established federal law. Nor was it unreasonable.

15

In Illinois, the term "bodily harm" as used in the context of aggravated criminal sexual assault consists of "physical pain or damage to the body, like lacerations, bruises, or abrasions, whether temporary or permanent." *People v. Bishop,* 843 N.E.2d 365, 375 (Ill. 2006) (quoting *People v. Mays*, 437 N.E.2d 633, 635-36 (Ill. 1982)). Bodily harm may be shown by actual injury or may be inferred by the trier of fact based upon circumstantial evidence in light of common experience. *Bishop*, 843 N.E.2d at 275 (citing *People v. Jenkins*, 545 N.E.2d 986, 1001 (Ill. 1989)).

The record demonstrates that Johnson's method of involuntarily moving J.B. from one area to the next was to choke her. According to J.B.'s testimony, he wrapped his arm tightly around her neck, applying pressure and causing her to have difficulty breathing. As the appellate court reasonably explained, common experience would dictate that J.B. would have felt physical pain as a result of Johnson pressing his arm against her airways tight enough to interfere with her breathing and cause a choking sensation. *Direct Appeal*, 26 N.E.3d at 595. Thus, the state appellate court's determination that there was sufficient evidence of bodily harm was reasonable as the jury could readily infer physical pain based on Johnson choking J.B. *See id.* Consequently, Claim 2 is denied.

## 2.    Claim 3:    Fatal Variance Claim

Johnson claims the disparity between the indictment, which alleged bodily harm from choking, and the evidence at trial, which demonstrated J.B. sustained bruises to her arms during the attack, constituted a fatal variance that deprived him of his right to due process. The state appellate court rejected Johnson's claim on direct appeal based on its finding that the State had offered sufficient evidence of choking to establish the element of bodily harm. *Id.* at 596.

Albeit merged with the discussion of Johnson's sufficiency of the evidence claims, the state appellate court effectively reached the merits on the fatal variance issue. *See Sturgeon v. Chandler*,

16

552 F.3d 604, 612 (7th Cir. 2009) (explaining the merits of a claim are "effectively reached" by the state court where an issue is addressed on the merits in the context of one claim but would not be decided any differently in the context of another claim). Thus, this Court's review of the state court's decision is deferential. *See* 28 U.S.C. § 2254(d).

The state court's rejection of Johnson's fatal variance claim was not "contrary to" clearly established federal law.[6] As explained above, the State advanced its theory of bodily harm by presenting evidence through J.B.'s testimony that Johnson choked her. J.B. detailed: how Johnson grabbed her around the neck, where he placed his arm, the amount of pressure he applied, and how it affected her ability to breathe. During closing arguments, the State walked through each element of the crimes charged and argued J.B. "endured bodily harm" when "[s]he was choked and "had a hard time breathing." (Dkt. 26-15, pgs. 43-44.) The State further reminded jurors they heard evidence of bodily harm when "[J.B.] described…how much [Johnson] was holding her neck in that choke-hold…" *Id.* at 85.

Contrary to Johnson's allegations, the record does not support a finding that there is any variance—much less a fatal one—between the element of bodily harm alleged in the indictment and the evidence of bodily harm adduced at trial. *See Dunn v. United States*, 442 U.S. 100, 105 (1979) ("A variance arises when the evidence adduced at trial establishes facts different from those

---

[6] The Court agrees with Respondent that much of the federal precedent on this topic relies upon Grand Jury Clause principles which are not applicable to the states. (Dkt. 25, pg. 15.) However, an indictment must comport with the Fourteenth Amendment's requirement of due process of law by providing the defendant with adequate notice of the charges against him such that he has the ability to defend himself against those charges. *Donval v. Chandler*, No. 05 C 1501, 2005 WL 2989884, at *11 (N.D. Ill. Nov. 4, 2005) (citing *Tague v. Richards*, 3 F.3d 1133, 1141) (7th Cir. 1993); *Bae v. Peters*, 950 F.2d 469, 478 (7th Cir. 1991)). "If any proven prejudice is 'severe enough,' then 'a due process violation could occur.'" *Id.* (quoting *Bae*, 950 F.2d at 478).

alleged in an indictment.") (citations omitted)). Johnson was put on notice of the charge of aggravated criminal sexual abuse causing bodily harm via choking in the indictment, and the State presented evidence in support of these facts in its case-in-chief. Accordingly, Claim 3 is denied.

### 3.    Claims 4 and 5:    Ineffective Assistance Claims

Claims 4 and 5 assert ineffective assistance claims based on alleged errors of trial and appellate counsel. An ineffective assistance of counsel argument is governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To demonstrate ineffective assistance of counsel, Johnson must establish both deficient performance and prejudice. *Premo v. Moore*, 562 U.S. 115, 121 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).

Like this Court's review of sufficiency of the evidence claims, ineffective assistance claims are also subject to a "doubly deferential standard" since an attorney's strategic choices are presumptively reasonable and since a federal habeas court must use § 2254(d)'s deferential standard. *Knowles*, 556 U.S. at 123; *see also Harrington*, 562 U.S. at 105 ("The standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so.") (internal quotations and citations omitted)).

### i.    Claim 4:    Eliciting Damaging Statements from J.B. on Cross-Examination

As previously discussed, the only claim sufficiently pled in Claim 4 is Johnson's argument that his trial counsel was ineffective for knowingly eliciting damaging testimony from the State's witness during cross-examination. Specifically, Johnson contends his attorney knowingly prompted J.B. to testify that "another victim" traveled with her to the police station to view the physical line-up. (Dkt. 33, pgs. 10-11.)

18

The last court to address this claim on the merits was the Illinois appellate court on direct appeal. Applying *Strickland*'s two-prong test, the state appellate court rejected Johnson's claim, finding counsel's performance did not fall below an objective standard of reasonableness. *Direct Appeal*, 26 N.E.3d at 600. This determination was neither contrary to, nor an unreasonable application of, *Strickland*.

As the record demonstrates, the "other victim" issue was raised at a pre-trial hearing where Johnson argued that the physical line-up was suggestive because both J.B. and another rape victim viewed it together. *Id.* The detective, however, testified that the other woman arrived before J.B. and the two women were in separate rooms and had no contact with one another during the physical line-up. *Id.* Based on the detective's testimony at the pre-trial hearing, Johnson's counsel could not have knowingly elicited a response from J.B. that another victim traveled with her to the police station. Rather, as the state court noted, it was reasonable for counsel to assume that J.B.'s boyfriend would have accompanied her—particularly given that he was the one who called the police upon learning she was sexually assaulted. *Id.* at 590, 600. Counsel's decision to ask the witness this question cannot be evaluated in hindsight simply because he received an unexpected response. *See Corral v. Foster*, 4 F.4th 576, 585 (7th Cir. 2021) (explaining a decision that was sound at the time it was made cannot support a claim of ineffective assistance of counsel even when, in hindsight, another decision may have led to a better result).

Further, there is no reasonable probability that the outcome at trial would have been different given the overwhelming evidence of Johnson's guilt. Not only did Johnson concede he had sex with the victim, but his identity was affirmatively established through DNA evidence found on J.B.'s vaginal and anal areas. Unsurprisingly, the jury disbelieved Johnson's story that

he and J.B., strangers, decided to have consensual sex in a backyard after a brief ride on the train together. Claim 4 is denied.

### ii.    Claim 5:    Failure to Request Lesser-Included Offense Jury Instructions

Claim 5 asserts ineffective assistance claims based on trial counsel's failure to request lesser-included offense jury instructions on unlawful restraint and battery and appellate counsel's failure to raise the issue on direct appeal.[7]  Applying *Strickland*, the state post-conviction trial court rejected both claims, finding trial counsel's performance was not deficient and, as a result, neither was appellate counsel. (Dkt. 26-7, pgs. 12, 18-20.) The appellate court affirmed the trial court's dismissal in a summary order. (Dkt. 26-10.) The post-conviction trial court was thus the last reasoned decision addressing this claim, and this Court will "look through" the appellate court's summary order and review the trial court's decision on the matter. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

### a.    Ineffective Assistance of Trial Counsel

In Illinois, a defendant is entitled to a lesser-included offense instruction where there is some evidence in the record that would permit a rational jury to reduce the crime charged to the lesser offense. *See People v. McDonald*, 77 N.E.3d 26, 33 (Ill. 2016); *People v. Novak*, 643 N.E.2d 762, 770 (Ill. 1994). Under the "charging instrument approach," Illinois' intermediate test to determining whether an offense is a lesser-included offense of another, the court looks to the

---

[7] In his reply, Johnson contends he also received ineffective assistance of post-conviction counsel with respect to his jury instruction claim. (Dkt. 33, pg. 7.) This claim is non cognizable on federal habeas review as there is no constitutional right to an attorney in state post-conviction proceedings. *Coleman v. Thompson*, 501 U.S. 722, 752 (1991).

20

charging instrument to see if the description of the greater offense contains a "broad foundation" or "main outline" of the lesser offense. *People v. Miller*, 938 N.E.2d 498, 502 (Ill. 2010).

The post-conviction trial court determined counsel's performance was not deficient because neither the charging instrument nor the evidence entitled Johnson to lesser-included offense instructions on unlawful restraint and battery.[8] (Dkt. 26-7, pg. 18.) The conflicting testimony between J.B. and Johnson did not turn on the grade of the offense committed, rather it rested on whether the encounter was consensual as Johnson claimed. While the State presented evidence that J.B. was choked, forcefully moved, and raped in support of the charges for aggravated kidnapping and aggravated criminal sexual assault, Johnson advanced a theory that the sexual encounter was mutually agreed upon and consensual. Thus, Johnson's counsel was not ineffective for failing to seek instructions that were not warranted by the evidence. *See Stevens v. Butler,* No. 15-CV-03523, 2020 WL 3618684, at *4 (N.D. Ill. July 2, 2020) ("Trial counsel will not be found ineffective for failing to seek an improper jury instruction.")

Even if Johnson had been entitled to an instruction on unlawful restraint and battery, defense counsel's failure to request these instructions would not constitute deficient performance under *Strickland*. "*Strickland* generally provides a presumption of strategic decision-making by counsel," *Mitchell v. Enloe*, 817 F.3d 532, 538-39 (7th Cir. 2016), and counsel's decision whether to request a lesser-included jury instruction swells in this very region of "tactics and strategy."

---

[8] Pursuant to Illinois' Criminal Code, the crimes of unlawful restraint and battery are defined as follows: A person commits unlawful restraint when he or she knowingly, without legal authority, detains another. 720 ILL. COMP. STAT. 5/10-3.1. A person commits battery if he or she knowingly and without legal justification by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual. 720 ILL. COMP. STAT. 5/12-3

*Adams v. Bertrand*, 453 F.3d 428, 436 (7th Cir. 2006). Here, it would have been reasonable for Johnson's counsel to forgo these instructions based on his client's theory of consent, as they would have decreased the likelihood of a complete acquittal if the jury believed Johnson's version of events. *See Lopez v. Thurmer*, 594 F.3d 584, 588 (7th Cir. 2010) (holding counsel's decision not to request a lesser-included offense instruction to avoid a possible compromise verdict was within the wide range of professionally competent performance under *Strickland*). Accordingly, the state court's rejection of Johnson's ineffective assistance claim was neither contrary to, nor an unreasonable application of, *Strickland*.

### b. Ineffective Assistance of Appellate Counsel

Johnson also argues his appellate counsel was ineffective for failing to raise his trial counsel's error regarding the lesser-included offense jury instructions on direct appeal. To establish deficient performance of appellate counsel under *Strickland*, Johnson must establish counsel failed to argue an issue that is both "obvious" and "clearly stronger" than the issues actually raised. *Makiel v. Butler*, 782 F.3d 882, 898 (7th Cir. 2015). Where an ineffective assistance of appellate counsel claim is predicated on trial counsel's errors, "the two claims rise and fall together." *Johnson v. Thurmer*, 624 F.3d 786, 793 (7th Cir. 2010).

Johnson's appellate counsel raised three ineffective assistance claims in Johnson's direct appeal, but none of them related to jury instructions on unlawful restraint and battery. As discussed above, trial counsel was not deficient in failing to request lesser-included offense jury instructions; thus, this claim was not stronger than any of the issues raised by appellate counsel. *See id.* Nor would it have been obvious, given the absence of evidence of battery and unlawful restraint at trial. It was therefore reasonable for the state court to reject Johnson's ineffective assistance of appellate

counsel claim as well. *See Makiel*, 782 F.3d at 898; *see also Warren v. Baenen*, 712 F.3d 1090, 1104 (7th Cir. 2013) ("Counsel is not ineffective for failing to raise meritless claims."). Claim 5 is denied.

### 4.     Claim 8:          Prosecutorial Misconduct in Closing Argument

In Claim 8, Johnson alleges he was deprived of a fair trial as a result of the State's prejudicial remarks during closing arguments. Specifically, in Johnson's reply brief, he contends the State made improper remarks by: (1) asking the jury "to put themselves in the shoes of the victim;" (2) calling him a "monster;" and (3) commenting on his credibility. (Dkt. 33, pg. 14.)

To sustain a due process claim of this nature, "it is not enough that the prosecutor's remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotations and citations omitted). Rather, the prosecutor's comments must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* When evaluating a due process claim grounded in statements made during closing argument, the Court considers several factors, including whether the prosecutor's comments manipulated or misstated the evidence, whether the defense invited the prosecutor's comments, and the weight of the evidence against the defendant. *Id.* at 181-183.

Before turning to the merits of Johnson's claim, the Court recognizes that the state court, both on direct appeal and in post-conviction proceedings, cited to state case law in its respective adjudications of this matter. *See Direct* Appeal, 26 N.E.3d at 586-97; (Dkt. 26-7, pgs. 7-8) (post-conviction trial court's ruling)). These citations are permissible and do not preclude deferential review because the state court need not cite to, or even be aware of, the controlling Supreme Court

23

precedent as long as the state decision does not contradict the Supreme Court case law. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). The state court rulings in this case meet this standard.

### i.        Placing The Jurors in The Victim's Shoes Analogy

Johnson first contends the State improperly asked the jurors to place themselves in the victim's shoes during rebuttal argument. He derives this claim from the State's comparison of the injuries J.B. sustained during the sexual assault to injuries sustained in a car accident where there are no visible markings and no eyewitnesses. The last state court to review this claim on the merits was the state appellate court on direct appeal. *See Direct Appeal*, 26 N.E.3d at 596-97. The state court rejected Johnson's claim on the ground that the analogy "aided the jury in understanding the evidence and was clearly not designed to arouse the jury's sympathy for a rape victim." *Id.* at 597.

The record is clear that the prosecutor did not ask the jurors to imagine themselves as J.B. on the night she was raped; rather, she offered the jurors an analogy to counter the defense's inference that the sexual assault did not happen because there were no visible injuries. In his closing, the defense argued J.B.'s testimony was entirely uncorroborated and cited the fact that "she ha[d] no injuries to her vagina" and "no evidence of any marks whatsoever" around her neck from being choked as examples. (Dkt. 26-15, pgs. 49-67.) In responding to these statements with the car accident analogy, the State did not misstate or otherwise manipulate the evidence. Instead, as the appellate court explained, the prosecutor offered the jurors an aid to assess J.B.'s credibility. *Direct Appeal*, 26 N.E.3d at 597.

Further, as has been previously discussed, the balance of the evidence in this case was not close. The DNA evidence established Johnson as the assailant and his preposterous version of events was undermined by J.B.'s testimony, the absence of any motivation for her to lie about the

24

attack, and her immediate disclosure of the rape to her boyfriend, the police, and emergency medical personnel. Thus, the appellate court's finding that the remark did not amount to prejudice against Johnson was neither contrary to nor an unreasonable application of Supreme Court precedent. *See Direct Appeal*, 26 N.E.3d at 597.

### ii.        Monster Comment

Johnson next contends the State violated his due process rights in calling him a "monster." The dismissal of this claim was affirmed by the appellate court on post-conviction appeal after the trial court, "[u]pon th[o]rough review of the entire trial record," found no such statement was made by the State during closing argument. (Dkt. 26-7, pgs. 8-9; Dkt. 26-10, pgs. 1-3.)

It appears, as Johnson explained in his post-conviction PLA, that he instead intended to argue that the State insinuated he was a "monster" in opening statements when the prosecutor called him a "stranger danger rapist." (Dkt. 26-13, pg. 7.) This argument is procedurally defaulted because it was not raised, at least not sufficiently raised, at each level of state court review. "Fair presentment requires the petitioner to give the state courts a meaningful opportunity to pass upon the substance of the claims later presented in federal court." *Rodriguez v. Scillia*, 193 F.3d 913, 916 (7th Cir. 1999); *see also Howard v. O'Sullivan*, 185 F.3d 721, 725 (7th Cir. 1999). To satisfy this requirement, Johnson must have placed both the operative facts and the controlling legal principles before the state courts. *See Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir. 2001); *Chambers v. McCaughtry*, 264 F.3d 732, 737-38 (7th Cir. 2001).

The "monster comment" issue was not "fairly presented" as Johnson did not provide the state courts with the "operative facts" of this claim. Therefore, the claim is procedurally defaulted

and, as discussed above, the default cannot be excused for cause and prejudice or a miscarriage of justice. Accordingly, the Court cannot reach the merits of this claim.

### iii. Credibility Comments

Finally, Johnson argues that the State made repeated comments concerning his credibility and called him a liar during closing argument. Again, because the appellate court on post-conviction appeal summarily affirmed the trial court's rejection of the claim without further explanation, the post-conviction trial court's decision was the last reasoned opinion addressing the claim. *See Wilson*, 138 S. Ct. at 1192. The trial court denied this claim upon determining the State's remarks regarding Johnson's credibility were all proper inferences from the evidence presented at trial and did not mistake the law. (Dkt. 26-7, pg. 9.) Under § 2254(d), this determination was neither contrary to, nor an unreasonable application of, clearly established federal law.

"Where the evidence supports an inference that the defendant has lied, then a comment in closing argument as to his credibility, including referring to him as a liar, is a hard but fair blow, as long as the argument is made based on the evidence and not a comment as to the prosecutor's personal opinion. *United States v. Iacona*, 728 F.3d 694, 701 (7th Cir. 2013); see also, e.g., *United States v. Alexander,* 741 F.3d 866, 871 (7th Cir. 2014) ("A prosecutor may comment on the credibility of a witness so long as the comment reflects reasonable inferences from the evidence."). Here, the record reflects that the State made its remarks regarding Johnson's credibility during rebuttal argument. The prosecutor's comments, however, were not an expression of her own personal belief regarding Johnson's credibility; rather, they were based on specific aspects of Johnson's testimony and the evidence overall. Further, the State's argument was largely invited

by the defense after Johnson called into question the victim's credibility during his closing argument.

Even if the prosecutor's statements insinuating Johnson was a liar were improper, they did not amount to prejudice. Beyond the weight of the evidence against Johnson, the trial court admonished the jurors that closing arguments are not evidence and instructed that it is their responsibility to determine the credibility of the witnesses and the weight of the evidence presented during trial. (Dkt. 26-15, pgs. 88-92.) Any impropriety in the State's comments were therefore mitigated by the trial court's instructions.

Thus, the State's remarks regarding Johnson's credibility did not amount to substantial prejudice so as to deprive Johnson of a fair trial. *See Tijerina v. Lashbrook,* No. 14 C 343, 2017 WL 1319669, at *6 (N.D. Ill. Apr. 6, 2017) (dismissing a closing argument claim where the statement, although improper, did not deprive the petitioner of a fair trial based on the responsive nature of the remark, the instructions to the jury, and the weight of the evidence). Claim 8 is therefore denied in its entirety.

### III.    Certificate of Appealability and Notice of Appeal Rights

Having determined that none of Johnson's claims warrant federal habeas relief, the Court denies his § 2254 petition. Petitioner is advised that this is a final decision ending his case in this Court.

The Court declines to issue a certificate of appealability. A certificate of appealability "may not issue 'unless the applicant has made a substantial showing of the denial of a constitutional right.'" *Slack v. McDaniel*, 529 U.S. 473, 483 (2000) (quoting 28 U.S.C. § 2253(c)). This requires a showing that reasonable jurists could debate whether this Court should have resolved Johnson's

claims differently or that the issues were "adequate to deserve encouragement to proceed further." *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing *Slack,* 529 U.S. at 484) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)). For the reasons stated above, Johnson has not met this standard.

If Petitioner wishes to appeal, he must (absent a basis for extension) file a notice of appeal in this Court within thirty days of the entry of judgment and seek a certificate of appealability from the United States Court of Appeals for the Seventh Circuit. *See* Fed. R. App. P. 4(a)(1); 28 U.S.C. § 2253(c)(1).

## IV.    Conclusion

The petition is denied. The Clerk is instructed to: (1) terminate Respondent Stephanie Dorethy, and replace her with Petitioner's current custodian, Mark Williams, Warden, Hill Correctional Center; (2) alter the case caption to *Johnson v. Williams*; and (3) enter a judgment in favor of Respondent and against Petitioner; and terminate the case.

ENTERED:

Dated: 6/9/2022

_____
JOHN J. THARP, JR.
United States District Judge